## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MATTHEW JOHNSON, Inmate #K64656,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**ILLINOIS DEPARTMENT OF** )<br>**CORRECTIONS, et al.,** )<br>)<br>**Defendants.** )<br>) | **CIVIL NO. 04-222-MJR** |

### MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, an inmate in the Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff previously was granted leave to proceed *in forma pauperis*, and he has tendered his initial partial filing fee as ordered.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in plaintiff's *pro se* complaint[1] and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Upon review of the complaint, the Court finds that Plaintiff's factual allegations present the following legal claims.[2]

---

[1] Plaintiff made a number of attempts to amend his complaint, which the Court denied due to Plaintiff's failure to comply with the local rule governing amended complaints. As explained in the February 21, 2006 order (Doc. 20), the Court is proceeding with its threshold review of ***only*** the amended complaint (Doc. 21)**.**

[2] Plaintiff's lengthy complaint is quite repetitive, presenting the same factual allegations over and over. The complaint is also disjointed; the factual allegations are not grouped together by type of claim. As a result, the Court has with great difficulty attempted to summarize Plaintiff's factual allegations into cohesive legal claims.

**COUNT 1:** Against Defendants Feinerman, Garcia, and Gonzales for deliberate indifference to Plaintiff's serious medical needs by failing to properly treat the side effects of Plaintiff's "high risk" medications.

**COUNT 2:** Against Defendants Dasher, Feinerman, Gail, Garcia, Gonzales, Hill, and Rice for deliberate indifference to Plaintiff's serious medical need of high blood pressure by not providing him with a low-sodium diet and not providing or providing the wrong medications.

**COUNT 3:** Against Defendants Feinerman, Garcia, and Rice for failing to provide nutritionally adequate meals.

**COUNT 4:** Against Defendants Dasher, Feinerman, and Garcia for not treating Plaintiff's equilibrium malfunction and discontinuing his low bunk/low gallery permit.

**COUNT 5:** Against Defendant Lane for causing Plaintiff unnecessary pain.

**COUNT 6:** Against Defendants Blades, Brown, Evans, Garcia, Gonzales, and Walker for requiring Plaintiff to pay $2.00 co-pay for each health care appointment in violation of Illinois state law.

**COUNT 7:** Against unspecified defendants for failing to provide Plaintiff with soap, toothpaste, and deodorant and for taking all of Plaintiff's state pay to pay for legal papers, thereby leaving him no money for personal hygiene products.

**COUNT 8:** Against Defendants Blades, Brown, Cole, Dasher, Deen, Dolce, Evans, Feinerman, Gail, Garcia, Gonzales, Hicks, Hill, Knope, Lane, McIntosh, Pursell, and Walker for failing to respond to or investigate his grievances.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides, in pertinent part:

(a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
    (1) is frivolous, malicious, or fails to state a claim on which relief
    may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such
    relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). After evaluating plaintiff's claims individually, the Court finds it appropriate to exercise its authority under Section 1915A to dismiss those claims that are frivolous before allowing plaintiff to proceed with his remaining claims. *See also House v. Belford*, 956 F.2d 711, 718-19 (7th Cir. 1992).

### GENERAL CONSIDERATIONS

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at ----, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However,

-3-

the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health--that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

**COUNT 1**

Plaintiff states that Defendants Feinerman, Garcia, and Gonzales were deliberately indifferent to his serious medical needs for failing to treat side effects of certain "high risk" medications.[3]  As a result Plaintiff suffered unnecessary pain of kidney stones and urinary tract infections and chronic back, neck, and muscle pain.

*Kidney Stones and Urinary Tract Infections*

On approximately June 19, 2001, Dr. Gonzales ordered a nephrotomogram that showed Plaintiff's kidneys were  clear and then gave him antibiotics to treat a possible urinary tract infection.  Plaintiff states that he was kept in the Pinckneyville medical center on a liquid diet for two days at this time (16).[4]  Plaintiff states that on two other occasions (October 14, 2001 and March 1, 2003) Dr. Gonzales denied Plaintiff antibiotics and pain-relieving medications for a urinary tract infection even after a urinalysis showed blood in his urine, causing unnecessary pain (17, 21-22). She recommended only that Plaintiff take Tylenol (22).  In October 2001 Plaintiff  had to pass two kidney stones without any pain medication other than Tylenol (17-18, 23). Plaintiff also states that in October 2001 there was extensive delay between the completion of tests and the return of the results, during which time he was not treated for pain (18).

*Chronic Back, Neck, and Muscle Pain*

---

[3]Plaintiff lists these medications as Crixivan and Combivir.  According to the National Institutes of Health website <http://www.nlm.nih.gov/medlineplus/>, Crixivan (Indinavir) is used to treat human immunodeficiency virus (HIV) infection in adults.  Combivir (Lamivudine and Zidovudine) is also used to treat HIV.  However, nowhere in the complaint does Plaintiff specifically state that he suffers from HIV infection.

[4]Here and throughout the discussion of Plaintiff's allegations, these parenthetical notations indicate the pages of the amended complaint (Doc. 21) where the specific allegations may be found.

Plaintiff states that Defendants Garcia and Gonzales had at one time prescribed Motrin for Plaintiff's musculoskeletal pain, but Defendant Feinerman discontinued it out of concern over the potential side effects from long-term use (12, 37, 39, 41-42, 48). Dr. Feinerman did not prescribe any other pain medication in its place, causing Plaintiff to experience "unbearable" pain (2, 39, 41-42, 53). Plaintiff states he was given Tylenol and told to purchase Tylenol from the commissary for his pain (5, 37, 42). Plaintiff states that Tylenol "does nothing for this chronic bone pain" (5). Plaintiff also reports that Dr. Feinerman recommended exercises to help Plaintiff with his musculoskeletal pain, but Plaintiff refused to do the exercises, stating "exercise was wrong" (41).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain". *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). Based on these standards, the general considerations noted above, and Plaintiff's allegations, this claim cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

## COUNT 2

Plaintiff states that Defendants Dasher, Feinerman, Gail, Garcia, Gonzales, Hill, and Rice were deliberately indifferent to his serious medical need of high blood pressure by failing to prescribe him a low-sodium diet and by not providing or providing the wrong medications. Plaintiff states that as a result of untreated high blood pressure, he experienced "black out spells," light headedness, dizziness, vomiting, nausea, black spots and flashes in his vision, and weakness (10-11,

31). Plaintiff also states that the high blood pressure medications caused chronic constipation, which Defendants refused to treat.

Plaintiff states that Defendant Gail gave Plaintiff false blood pressure readings on several occasions, failed to schedule an appointment with a doctor after getting a high blood pressure reading, and failed to make notations of all of Plaintiff's complaints in his medical chart, thereby deliberately and intentionally causing him pain (4, 10, 11, 31, 32, 51). Plaintiff states that Defendant Dasher failed to log into the medical records Plaintiff's complaints of chest pain and light heart attacks from the blood pressure medications (11, 33).

*Improper Diet*

Plaintiff states that foods cooked with Seasons Additives cause his blood pressure to rise, leading to headaches and pain and pressure in his temples, dizziness, and itching (2, 26, 27, 36-37, 44). Many foods at Pinckneyville are cooked with the additives (19). Defendant Garcia placed Plaintiff on a low-fat/low-cholesterol diet (not a low-sodium diet), because Pinckneyville did not offer a low-sodium diet, but Dr. Garcia knew that the low-fat/low-cholesterol diet was cooked without Seasons Additives (3, 13, 26, 36). However, the low-fat/low-cholesterol diet was eventually discontinued because Plaintiff did not objectively qualify for it. Therefore, Plaintiff had to attempt to avoid foods cooked with the additives on his own (2, 44). As a result, Plaintiff was denied nutritionally adequate meals which caused light heart attacks, mental anguish, and emotional distress (4, 14, 52). Plaintiff states that Dr. Feinerman and Dr. Gonzales continue to deny him a low-sodium diet (18, 26, 33, 53). Plaintiff believes he should have been transferred to another facility where he could have received a proper low-sodium diet (7-8, 14).

*Blood Pressure Medications*

Plaintiff states that the only medical treatment he received for his hypertension was the recommendation that he take Tylenol for his headaches (2, 15, 26, 33). He states that eventually Defendants Gonzales and Garcia did order medication to control his blood pressure, but that he was exposed to unnecessary pain in the interim (3). Plaintiff states that the "unbearable" side effects from the medications were left untreated, and that the medications were unable to control his high blood pressure (9, 33-34). Plaintiff states that he experienced "flashes" in his eyes and weakness as side effects of the blood pressure medications (11, 31-32). On February 25, 2003, Plaintiff complained of side effects of chest pain, left arm pain, and numb hands and fingers. Both Dr. Garcia and Nurse Dasher failed to write these complaints in Plaintiff's medical chart (33). Plaintiff also states that medications to control his hypertension would not have been necessary had he been given the proper diet (33-34, 42). Plaintiff states that Defendant Rice falsified his blood pressure readings in the medical records (13, 33).

*Chronic Constipation*

Plaintiff states that the blood pressure medications caused chronic constipation (including intense pain and bleeding) that was ignored from January 9 to January 22, 2003 (3, 10). Plaintiff states that he was eventually prescribed Metamucil for the constipation (3), but that it was stopped later by Dr. Feinerman. Plaintiff further states that both Defendants Garcia and Feinerman failed to treat the constipation (3, 30, 42, 51). Plaintiff also states that when he requested treatment for the constipation and bleeding, he was required to wait five days before seeing a doctor (3, 10, 29, 30-31). Plaintiff states that he continues to suffer from constipation (37, 43). Plaintiff states that Defendant Hill intentionally failed to log into the medical chart Plaintiff's complaint of blood in his stool in an effort to cause Plaintiff pain. (pp. 11, 29)

Based on these allegations and the legal standards stated above, this claim of deliberate indifference to the serious medical need of high blood pressure cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

## COUNT 3

Plaintiff states that Defendants Feinerman, Garcia, and Rice failed to provide him with nutritionally adequate meals. Defendant Garcia prescribed him a food supplement, Resources, but Plaintiff states that he never received it (2, 8, 26). As a result of being denied the food supplement coupled with the necessity of self-monitoring his diet in an attempt to control his blood pressure, Plaintiff did not receive nutritionally adequate meals (18-19, 26, 42, 44-45, 50-54). Plaintiff states that he experiences constant "hunger pain" (27) and has lost over 20 pounds (28, 42, 50). Plaintiff states that Defendants Feinerman and Rice eventually discontinued the prescription for Resources (3, 9), and have not reinstated it (39).

Prisons are obligated to provide inmates with nutritionally adequate food and a denial of a nutritious diet may violate the Eight Amendment. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996) (*citing French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)). Based on this legal standard and Plaintiff's allegations, Plaintiff has stated a claim of constitutional dimension. Accordingly, this claim cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

## COUNT 4

Plaintiff states that his equilibrium "goes and comes" causing him to lose his balance and fall (4, 35). Plaintiff states that this presents a substantial risk of serious harm and that Pinckneyville physicians' refusal to treat the condition is a denial of proper medical treatment (4). Plaintiff states that because of the condition, it was deliberate indifference to his serious medical need for

Defendant Garcia to discontinue his low bunk/low gallery permit (37, 45). Dr. Feinerman also failed to address the problem of the low bunk/low gallery permit (40). On March 11, 2003, Plaintiff fell after he lost his equilibrium, injuring his hand and ankle. Plaintiff saw Dr. Garcia the next day for the injuries, but neither Dr. Garcia nor Nurses Dasher filed an injury report (11, 35). Plaintiff states that he fell on other occasions and no injury report was made (4, 11).

Based on Plaintiff's allegations and the standards noted above, this claim cannot be dismissed from the action at this point in the litigation. *See* 28 U.S.C. § 1915A.

### COUNT 5

Plaintiff states that Defendant Lane caused Plaintiff unnecessary unbearable pain trying to take his blood by sticking him several times with a needle "nowhere near veins." Plaintiff states that Defendant Lane did this deliberately (4, 12, 40).

While the Court recognizes that being stuck with a needle in an effort to find a vein for the taking of blood can cause pain, it is not the type of "wanton and unnecessary infliction of pain" that impinges upon an inmate's right to be free of cruel and unusual punishment under the Eighth Amendment. As such, this claim is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 6

Plaintiff states that he was required to pay $2.00 every time he had a health care appointment, even for his chronic conditions, in violation of Illinois state law. He states that Defendants Blades, Brown, Evans, Garcia, Gonzales, and Walker were all responsible for either charging the co-pay in violation of state law or were aware that the money was being taken from his prison account for the appointments (4, 6, 12, 13, 19-20, 25, 28-9, 35-36, 40, 43, 45-46, 54).

Courts have consistently held that such a co-payment plan is not unconstitutional. *See Reynolds v. Wagner*, 128 F.3d 166, 174 (3rd Cir. 1997) (prisoner co-payment plan does not violate the Eighth Amendment); *Shapley v. Nevada Bd. of State Prison Commissioners*, 766 F.2d 404, 408 (9th Cir. 1985) (nothing *per se* unconstitutional about charging an inmate $3 for every medical visit; such a charge, by itself, did not constitute deliberate indifference under *Estelle*); *Hudgins v. DeBruyn*, 922 F.Supp. 144, 150-52 (S.D.Ind. 1996) (prisoner co-payment plan does not violate the Eighth Amendment); *Martin v. DeBruyn*, 880 F.Supp. 610, 615 (N.D.Ind. 1995), *aff'd*, 116 F.3d 1482 (7th Cir. 1997) (Eighth Amendment guarantees only that inmates receive necessary medical care; it does not guarantee free medical care).

> It is true that Illinois law provides the following:
>
> The Department shall require the committed person receiving medical or dental services on a non-emergency basis to pay a $2 co-payment to the Department for each visit for medical or dental services. The amount of each co-payment shall be deducted from the committed person's individual account. A committed person who has a chronic illness, as defined by Department rules and regulations, shall be exempt from the $2 co-payment for treatment of the chronic illness.

730 ILL. COMP. STAT. 5/3-6-2(f). However, "the federal government is not the enforcer of state law." *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). The only *constitutional* right that might be implicated by these facts is plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The

Court finds that plaintiff has (or had) an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims, *see* 705 ILL. COMP. STAT. 505/8 (1995), and therefore, he has no claim under § 1983. Accordingly, this claim is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 7

Plaintiff states that unspecified defendants refused to provide him with soap, toothpaste, and deodorant and have not left enough money in his prison account for these items because all the money has been taken for legal costs (5, 44-45, 49-50, 51, 52-53). Plaintiff states that as a result of the denial of personal hygiene items, he developed jock itch and foot fungus (44-45, 48, 52). Plaintiff states that he went without soap, deodorant, and toothpaste for almost two months, causing intense discomfort and emotional distress. Plaintiff states that this was an improper denial of life necessities (45).

No constitutional principle requires that inmates be permitted to own or receive hygiene items for the sake of owning cosmetics, but the deprivation of essential items may leave a prisoner exposed to the elements, or unable to care for his most fundamental needs, and thereby put his health in jeopardy. At that point, a constitutional right may be implicated. In *Harris v. Fleming*, 839 F.2d 1232 (7th Cir. 1988), the court considered an inmate's claim that he was denied toilet paper for five days and denied soap, a toothbrush and toothpaste for ten days, while "he was kept in a filthy, roach-infested cell." *Id.* at 1234. The court noted that "Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Id.* at 1235-36. The court continued that "[a]lthough Harris experienced considerable unpleasantness, he suffered no physical harm," *id.* at 1235, and found that

the conditions simply did not rise to the level of an eighth amendment violation. However, in *Board v. Farnham*, 394 F.3d 469 (7th Cir. 2005), the Seventh Circuit determined that a denial of hygienic items rose to the level of a constitutional violation where the denial posed an unreasonable risk of serious damage to future health. In that case, the Court determined that denial of toothpaste, where it caused tooth decay, eventually requiring that the inmate's teeth be extracted, stated a claim of deliberate indifference to a serious medical need. *Id.* at 478.

Here, Plaintiff claims that the denial of hygienic items eventually caused jock itch and foot fungus. At this stage of the litigation, Plaintiff's claim must be taken as true. Accordingly, based on these standards and Plaintiff's allegations, Plaintiff has sufficiently stated a claim of deliberate indifference to a serious medical need. As such, this claim cannot be dismissed at this point in the litigation. *See* 28 U.S.C. § 1915A.

There is a problem, however, with Plaintiff's expression of this particular claim. He does not specify by name the defendants responsible for the deprivation of hygienic items, stating only that they are "Pinckneyville officials." While it is within the Court's discretion to allow Plaintiff to proceed against unknown defendants, the use of fictitious names is generally frowned upon. *See K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997). However, where a Plaintiff alleges objectively serious constitutional deprivations, he or she should be allowed "a reasonable opportunity to identify unnamed defendants and amend his complaint." *See Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999). To the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation. *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 n. 3 (7th Cir. 1996)(collected cases); *see also K.F.P. v. Dane County,* 110 F.3d 516, 519 (7th Cir. 1997). Therefore, at this point

in the litigation Plaintiff will be allowed to proceed on this claim, even though no specific defendants are named. Plaintiff should make every attempt to identify these defendants.

#### COUNT 8

Throughout the complaint, Plaintiff states that Defendants Blades, Brown, Cole, Dasher, Deen, Dolce, Evans, Feinerman, Gail, Garcia, Gonzales, Hicks, Hill, Knope, Lane, McIntosh, Pursell, and Walker and other unknown defendants failed adequately review the allegations of lack of medical treatment described in grievances and failed to properly investigate the allegations.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Accordingly, this claim is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

#### DEFENDANTS

All claims against Defendants Blades, Brown, Cole, Deen, Dolce, Evans, Hicks, Knope, Lane, McIntosh, Pursell, and Walker have been dismissed from the action. Accordingly, these Defendants are also **DISMISSED** from the action.

The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against states in federal court for money damages); *Billman v. Indiana Department of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit

by virtue of Eleventh Amendment); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 218, 220 n. 3 (7th Cir. 1990) (same). Accordingly, the Illinois Department of Corrections is **DISMISSED** as a defendant from the action.

<u>SUMMARY AND CONCLUSION</u>

Plaintiff is allowed to proceed against Defendants Feinerman, Garcia, and Gonzales on Count 1; against Defendants Dasher, Feinerman, Gail, Garcia, Gonzales, Hill and Rice on Count 2; against Defendants Feinerman, Garcia, and Rice on Count 3; against Defendants Dasher, Feinerman, and Garcia on Count 4; and against unspecified defendants on Count 7. Counts 5, 6, and 8 are dismissed from the action.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants ***Dasher, Feinerman, Gail, Garcia, Gonzales, Hill, and Rice***. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the amended complaint (Doc. 21) and this Memorandum and Order to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants ***Dasher, Feinerman, Gail, Garcia, Gonzales, Hill, and Rice*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the amended complaint (Doc. 21), applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name on a USM-285 form and in a properly filed amended

complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 22nd day of March, 2006.**

> **s/ Michael J. Reagan**
> **MICHAEL J. REAGAN**
> **United States District Judge**